# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 11/26/2025 03:29:00 PM.
30-2025-01492210-CU-CO-CJC - ROA # 53 - DAVID H. YAMASAKI, Clerk of the Court By S. Berry, Deputy Clerk.
Case 8:25-cv-02425-JVS-DFM Document 22-4 Filed 12/22/25 Page 2 of 24 Page ID #:10

Amjad M. Khan (SBN 237325)
 *amjad@bnsklaw.com*
Arun S. Avva (SBN 354481)
 *arun@bnsklaw.com*
**BROWN NERI SMITH & KHAN LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
T: (310) 593-9890
F: (310) 593-9980

*Attorneys for Plaintiff Lugano Diamonds &*
*Jewelry Inc.*

GARRETT S. LLEWELLYN (SBN 267427)
garrett.llewellyn@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067-2904
T: (310) 284-3880
F: (310) 284-3894

*Attorneys for Plaintiff Lugano Diamonds & Jewelry*
*Inc., by and through the Special Committee of the*
*Board of Directors of Lugano Diamonds*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF ORANGE
## CIVIL COMPLEX CENTER

| | |
|---|---|
| LUGANO DIAMONDS & JEWELRY INC., a California corporation<br><br>    Plaintiff,<br><br>    v.<br><br>MORDECHAI FERDER, an individual acting on his own behalf, and in his capacity as Trustee of the Haim Family Trust; VAD & COMPANY, INC., a Florida corporation; and DOES 1–50;<br><br>    Defendants. | Case No.  30-2025-01492210-CU-CO-CJC<br><br>**FIRST AMENDED COMPLAINT:**<br><br>1.  **FRAUD**<br>2.  **CONCEALMENT**<br>3.  **CONSTRUCTIVE FRAUD**<br>4.  **BREACH OF FIDUCIARY DUTY**<br>5.  **CIVIL THEFT**<br>6.  **CONVERSION**<br>7.  **MONEY HAD AND RECEIVED**<br>8.  **CONVERSION**<br>9.  **INTENTIONAL INTERFERENCE WITH CONTRACT**<br>10. **VOIDABLE TRANSFER**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lugano Diamonds & Jewelry Inc. ("Lugano" or "Plaintiff") hereby alleges against Defendants Mordechai Ferder ("Moti"), individually and in his capacity as trustee of the Haim Family Trust ("Haim Family Trust"); VAD & Company, Inc. ("VAD"); and DOES 1 through 50, inclusive as follows:

**INTRODUCTION**

1.    Lugano is a renowned high-end diamond and jewelry retailer. It sells diamonds, other precious stones, and high-end jewelry directly to clients around the world. Lugano is known for selling unique pieces and for fostering strong, lasting relationships with its many clients and the communities in which it operates. Since 2005, it has grown rapidly on the back of its robust retail business, expanding from a single boutique in Newport Beach, California to multiple boutiques throughout the United States and a boutique in London, staffed by over 150 employees.

2.    Unfortunately, Defendant Moti, Lugano's former Chief Executive Officer of Lugano, conspired with his son, Tom Ferder ("Tom"), to engage in fraudulent schemes outside of Lugano's retail business to steal millions of dollars from the company and expose it to significant potential liabilities and reputational harm. Among other things, Moti concealed and mispresented the nature of numerous financing transactions he entered into with third party, high net worth individuals ("Outside Contracts"). By their terms, the Outside Contracts created potential liabilities for Lugano, but Moti disguised them as direct sales. He forged invoices and sale documents, sent out empty box shipments, falsely recorded the money from the third-party individuals as revenue for Lugano, and concealed the repayment obligations from Lugano's books. Moti lied to Lugano officers and directors and Lugano employees to perpetuate their scheme and avoid detection. Moti even misappropriated Lugano funds to repay some of the third-party individuals by concealing the repayments as legitimate business expenses and vendor payments. Moti's scheme has potentially exposed Lugano to over $100 million in liability.

3.    Moti also stole millions more from Lugano by authorizing fraudulent wire transfers to his own Haim Family Trust while putting false beneficiary information in the wire transfer documents.

4.    When Lugano and Compass Diversified, Lugano's majority shareholder, discovered accounting discrepancies resulting from Defendants' scheme, Moti resigned. He is currently staying in Tel Aviv, Israel, and has moved assets out of the United States or sold his assets in the United States and

1  funneled the money out of the United States and to Israel.

2      5.      Through this Complaint, Lugano seeks to hold Moti responsible for the substantial harm

3  he has caused through his fraudulent activities.

## PARTIES

4

5      6.      Plaintiff Lugano is, and all times mentioned herein was, a California corporation with its

6  principal place of business in Newport Beach, California.

7      7.      Defendant Moti is an individual residing in Corona del Mar, California.

8      8.      Defendant Haim Family Trust, of which Moti is trustee, is and at all times mentioned

9  herein was, a trust with its principal residence in Corona del Mar, California.

10     9.      Defendant VAD & Company, Inc. is a Florida corporation with its principal place of

11  business in Orlando, Florida.

## JURISDICTION AND VENUE

12

13     10.     This Court has jurisdiction and venue over this matter because the events giving rise to

14  this action occurred within this county.

## GENERAL ALLEGATIONS

15

16  **A.      Moti Serves as CEO of Lugano.**

17     11.     Lugano is a thriving high-end diamond and jewelry retailer. It began in 2005 with a single

18  store in Newport Beach, California. Lugano has a robust retail business selling unique diamonds, other

19  precious stones, and high-end jewelry directly to clients all over the world. Many of its clients have been

20  loyal customers of Lugano for years and have acquired several valuable items from Lugano.

21     12.     On the strength of this retail business, Lugano now operates boutiques in California,

22  Colorado, Connecticut, Florida, Illinois, Washington, D.C., and London and sources unique stones for

23  its clients from all over the world. Lugano employs over 150 employees and prides itself on its close

24  involvement in the communities in which it operates and the diligence and care by which it conducts its

25  operations.

26     13.     Up until his resignation in May 2025, Moti previously served as Chief Executive Officer

27  of Lugano. He was closely involved with customer relationships and handled virtually all his

28  communications with third parties through personal emails and text messages, often on his phone.

---

FIRST AMENDED COMPLAINT

2

14.    Tom, Moti's son, has held several corporate positions with Lugano, and most recently served as its Director of Business Development prior to his termination in May 2025. Tom worked closely with Moti on sales and had at least monthly closed door meetings with Moti about Moti's sales plans. Tom had intimate knowledge of all of Moti's clients and the details of all of Moti's sales. He was well positioned to identify any false or non-genuine sales by Moti.

15.    In 2021, Compass Group Diversified Holdings LLC ("Compass Diversified") acquired a majority ownership stake in Lugano.  As part of that transaction, Lugano agreed not to procure outside investments or financing without Compass Diversified's approval. Moti was closely involved with this transaction and had actual knowledge of this agreement.

**B.    Moti Enters Into Outside Contracts with Third Parties and Conceals the Nature of these Outside Contracts in Lugano's Books by Forging Documents and Sending Sham Shipments.**

16.    Moti clearly grew dissatisfied with Lugano's retail business and sought to enrich himself through other schemes.

17.    Notwithstanding Lugano's 2021 agreement with Compass Diversified, Moti entered into numerous unauthorized transactions, the Outside Contracts, outside of Lugano's ordinary retail business, with high-net-worth individuals in California, Florida, and other states.

18.    Although the specific terms of each of these Outside Contracts varied, they adhered to a common scheme orchestrated by Moti. In each instance, Moti represented to the third party that Lugano already owned or intended to acquire a specific diamond—purportedly verified by a unique identification number—and expected to sell it at a significant profit. Moti proposed that Lugano and the third party would each contribute a percentage of the purchase price or that the third party could purchase a percentage interest in the diamond purportedly already owned by Lugano. Moti further represented that the anticipated profits from the sale of the diamond would be shared pro rata with the third party. Alternatively, if the third party chose not to wait for resale, Moti promised that Lugano would return the third party's funds, plus a guaranteed, and substantially above market, interest rate.

19.    Moti deliberately concealed the true nature of these Outside Contracts from Lugano by disguising them as part of Lugano's robust, legitimate retail business.  He falsely claimed to Lugano

personnel that these were ordinary sales—transactions in which Lugano sold diamonds outright to third parties. This was a lie. Moti then manipulated Lugano's internal accounting records to characterize the incoming funds as revenue rather than liabilities, thus obscuring the repayment obligations under the Outside Contracts. By doing so, Moti misled internal stakeholders and auditors regarding Lugano's actual performance and valuation.

20. To sustain the illusion that Lugano had completed legitimate diamond sales, Moti forged invoices and other documentation purporting to evidence arms-length transactions. In some cases, Moti arranged for empty boxes to be shipped to addresses across the United States, including, for example, to Montana, so that he could point to shipping records as false proof that the transactions had been fulfilled. These fictitious documents and shipping records were then presented to auditors and others as legitimate proof of sales, when in fact, they were manufactured to complete the illusion of the sales.

21. During the time Moti carried out this scheme, Compass Diversified retained Grant Thornton to conduct an audit of Lugano in preparation for the issuance of required SEC filings by Compass Diversified. Grant Thornton's audits failed to detect crucial evidence of the fraud. Because Moti received advanced notice from Grant Thornton of its anticipated inventory audits, Moti could obtain and replace diamonds and other jewelry in Lugano's inventory prior to Grant Thornton's audits and thereby create the false impression that Lugano had possession of items that it did not actually possess.

22. Moti used Lugano funds to repay some of the third parties. In at least some instances, Moti concealed these outgoing repayments to the third parties as payments to vendors. But Moti did not repay all the third-party investors, which potentially exposed Lugano to over $100 million in liability. Several third parties have already sued Lugano in relation to the Outside Contracts.

23. Numerous third-party vendors assisted Moti with his Outside Contracts scheme by serving as apparent counterparties, guarantors, payment conduits, and shipping targets that helped conceal the transactions. Moti arranged for vendors and related entities (such as VAD) to accept or route shipments, to buy or take in client pieces, and to send funds that were then applied to accounts receivable or characterized as vendor payments. He also had a consigned diamond redirected to VAD instead of Lugano. These outside parties (sometimes used as purchasers of unwanted pieces or as payors on behalf of clients) and the shipping records they produced—including empty or redirected

shipments—were presented as evidence of legitimate sales, while funds were furtively funneled through vendor-like payees to mask repayments and misstate Lugano's revenues and liabilities.

24.     Tom knew of Moti's Outside Contracts scheme. Tom served in a variety of corporate roles for Lugano and worked closely with Moti on sales for the company. Tom and Moti had at least monthly closed-door meetings to discuss Moti's sales plans, and Tom had close knowledge of all of Moti's sales and clients. Tom knew or should have known that Moti's sham sales described above were not genuine sales.

25.     On one occasion, a salesperson working in a Houston boutique of Lugano asked Tom whether the salesperson should get to know a particular third party, whom Moti had misrepresented as a client. To prevent the salesperson from contacting that third party and avoid detection of the fraudulent scheme, Tom told the salesperson that the third party was not a client of Lugano but did not disclose the true relationship through the Outside Contract.

26.     As a result of Moti's fraud and concealment of the Outside Contracts from Lugano, Lugano has been exposed to numerous lawsuits from the third parties and has suffered substantial reputational harm. Some of the third parties have shown up to Lugano boutiques, yelled at and harassed Lugano staff, and even threatened to call the police on Lugano employees.

**C.    Moti Embezzles Millions of Dollars from Lugano and Directs it to His Family Trust.**

27.     Separate from the Outside Contracts, Moti also embezzled millions of dollars from Lugano.

28.     Moti used his position as CEO to authorize wire transfers from Lugano bank accounts to a bank account belonging to the Haim Family Trust, for which Moti serves as trustee.

29.     Moti concealed the recipient of these wire transfers by designating a different entity as the beneficiary on the documentation for the wire transfer. For example, Moti caused "Charles Schwab & Co. Inc." to be listed as the beneficiary for certain wires. But the bank account information on those wires confirms that these went to bank accounts belonging to the Haim Family Trust.

30.     Between January and February 2024, Moti engaged in at least four of these fraudulent wire transfers totaling at least $2.3 million. The full extent of Moti's embezzlement is still under investigation.

**D.      Moti Steals a Diamond on Consignment to Lugano and Transfers it to VAD, Which Continues to Retain the Diamond**

31.      In January 2025, Moti arranged for Scarselli Diamonds ("Scarselli") to provide a diamond on consignment to Lugano ("Scarselli Diamond"). Moti represented to Scarselli that he wanted to show the diamond to a potential buyer in Miami, Florida, and directed Scarselli to send the diamond to Miami for pickup by a Lugano employee.

32.      After Scarselli shipped the diamond, Moti caused the Scarselli Diamond to be re-routed to an address in Oviedo, Florida, belonging to VAD. On information and belief VAD entered an agreement with Moti, a California resident, to take possession of the Scarselli Diamond.

33.      Moti never added information to Lugano's records about the Scarselli Diamond, the consignment from Scarselli, or the agreement with VAD for VAD to take possession of the Scarselli Diamond, all in an effort to conceal this scheme from detection. Lugano did not even learn of Moti's theft or VAD's possession of the Scarselli Diamond until Scarselli asked Lugano about the diamond and provided evidence that it had been consigned to Lugano.

34.      On July 3, 2025, Scarselli filed a lawsuit in Orange County Superior Court captioned *N.B.S. Diamonds Inc. dba Scarselli Diamonds v. Lugano Diamonds & Jewelry, Inc. et al.*, Case No. 30-2025-01494948-CU-BC-CJC, bringing claims against Lugano for the loss of the Scarselli Diamond.

35.      VAD is aware that the Scarselli Diamond was furnished by Scarselli on a consignment basis and that Moti had no right to send it to VAD, but VAD nonetheless refuses to return it, knowingly causing harm to Lugano in California.

**E.      Moti Resigns and Begins Moving Assets Out of the Country.**

36.      Separately, in or around April 2025, accounting discrepancies resulting from Moti's scheme were identified, which prompted an investigation into Lugano's accounts and Moti's actions, which investigation is currently ongoing. At the time, Moti was in Tel Aviv, Israel. Faced with the prospect of the full depth of his fraudulent activities coming to light and being terminated for cause, Moti chose to resign as CEO of Lugano in May 2025. Since then, he has remained in Tel Aviv and has not returned to the United States.

37.      On information and belief, since that date, Moti has transferred valuable assets, including

artwork, cars, and other valuable items from his residence in California to Tel Aviv, presumably to remove those assets from the jurisdiction of courts in California and the United States.

38.    On June 17, 2025, Moti sold his California residence to Serenade Newport, LLC ("Serenade Newport"), a California limited liability company that was formed on June 13, 2025, apparently for the sole purpose of effectuating this transaction. Upon information and belief, Moti sold his residence for about $7 million, which is less than its market value of about $9 million.

39.    On information and belief, Moti sold his California residence for less because Moti wanted to quickly liquidate his assets and move the money out of California. At the time that Moti sold his California residence, an *ex parte* application was pending in a case brought by a third party, *Winters v. Lugano Diamonds & Jewelry Inc., et al.*, Case No. 8:25-cv-01202, United Stated District Court, Central District of California. The Winters court entered a temporary protective order against Moti placing a lien on the property, but Moti had managed to sell it the day before.

40.    Serenade Newport is managed by Sahand Zargari, a real estate agent who works for the Daftarian Group. Upon information and belief, the owners of the Daftarian Group, Paul and Lili Daftarian, are friends with Moti and have worked with Moti in community organizations and fundraisers in Newport Beach. They knew that Moti was facing impending legal trouble and knew that he had fled the United States and took advantage of the situation by buying Moti's California residence for less than its fair market value.

## FIRST CAUSE OF ACTION

### FRAUD (against Moti)

41.    Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

42.    At all relevant times, Moti was the CEO of Lugano.

43.    Moti entered several Outside Contracts with third parties in which he solicited funds from the third parties to either acquire an interest in diamonds that Moti claimed Lugano already owned or to purchase diamonds with additional funds from Lugano, with the agreement that the parties would then share the profits from Lugano's later sale of that diamond.

44.     Moti misrepresented the true nature of the Outside Contracts to Lugano by causing these transactions to be falsely recorded as sales in Lugano's books, causing the money received from the third parties to be falsely recorded as revenue in Lugano's books, and preventing the repayment obligations of the Outside Contracts from being properly recorded as obligations or liabilities in Lugano's books.

45.     Moti also presented forged sales documents and shipping records of empty shipments to Lugano to support the misrepresentation that these transactions were sales. To repay some of the third parties and avoid detection of his scheme, Moti directed payments from Lugano to VAD, misrepresenting to Lugano that these were legitimate business payments to a vendor.

46.     Moti's varied efforts to conceal the Outside Contracts scheme confirm that he conducted the scheme without the knowledge of others at Lugano and that he knew his conduct was wrongful.

47.     Moti intended Lugano to rely on these false misrepresentations designed to conceal the nature of the Outside Contracts.

48.     Lugano did, in fact, rely on these misrepresentations and was kept in the dark about the true nature of the Outside Contracts.

49.     Moti's misrepresentations were a substantial factor in causing Lugano to now face numerous lawsuits from some of the third parties with whom Moti entered into Outside Contracts. Moti's fraudulent scheme was also a substantial factor in causing substantial reputational harm to Lugano.

50.     Separately Moti caused numerous wire transfers totaling millions of dollars to go from Lugano's bank accounts to accounts belonging to the Haim Family Trust.

51.     Moti misrepresented the beneficiaries on the documentation accompanying the wire transfers to prevent Lugano from realizing that that these were not legitimate business expenditures.

52.     Moti intended for Lugano to rely on the misrepresentations as to the true beneficiary of these wire transfers.

53.     Lugano did, in fact, rely on the misrepresentations as to the true beneficiary of these wire transfers.

54.     Moti's misrepresentation was a substantial factor in causing Lugano to lose millions of dollars in fraudulent wire transfers.

55.    In his conduct described above, Moti acted with malice, oppression, and/or fraud, making him liable for punitive damages.

## SECOND CAUSE OF ACTION

### CONCEALMENT (against Moti)

56.    Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

57.    At all relevant times, Moti was the CEO of Lugano and owed a duty to Lugano to be truthful with regard to business dealings he engaged in purportedly on behalf of Lugano.

58.    Moti entered several Outside Contracts with third parties in which he solicited funds from the third parties to either acquire an interest in diamonds that Moti claimed Lugano already owned or to purchase diamonds with additional funds from Lugano, with the agreement that the parties would then share the profits from Lugano's later sale of that diamond.

59.    Moti concealed the true nature of the Outside Contracts to Lugano by causing these transactions to be falsely recorded as sales in Lugano's books, causing the money received from the third parties to be falsely recorded as revenue in Lugano's books, and preventing the repayment obligations of the Outside Contracts from being properly recorded as obligations or liabilities in Lugano's books.

60.    Moti also presented forged sales documents and shipping records of empty shipments to Lugano to conceal the true nature of the Outside Contracts. To repay some of the third parties and avoid detection of his scheme, Moti directed payments from Lugano to VAD, misrepresenting to Lugano that these were legitimate business payments to a vendor, and concealing the true purpose of these payments.

61.    Moti's varied efforts to conceal the Outside Contracts scheme confirm that he conducted the scheme without the knowledge of others at Lugano and that he knew his conduct was wrongful.

62.    Moti intended for Lugano to rely on these false misrepresentations designed to conceal the nature of the Outside Contracts.

63.    Lugano did, in fact, rely on these misrepresentations and was kept in the dark about the true nature of the Outside Contracts.

64. Moti's concealment was a substantial factor in causing Lugano to now face numerous lawsuits from some of the third parties with whom Moti entered into Outside Contracts. Moti's concealment was also a substantial factor in causing substantial reputational harm to Lugano.

65. Separately, Moti caused numerous wire transfers totaling millions of dollars to go from Lugano's bank accounts to accounts belonging to the Haim Family Trust.

66. Moti misrepresented the beneficiaries on the documentation accompanying the wire transfers to prevent Lugano from realizing that these were not legitimate business expenditures.

67. Moti intended for Lugano to rely on the misrepresentations as to the true beneficiary of these wire transfers.

68. Lugano did, in fact, rely on the misrepresentations as to the true beneficiary of these wire transfers.

69. Moti's concealment was a substantial factor in causing Lugano to lose millions of dollars in fraudulent wire transfers.

70. In his conduct described above, Moti acted with malice, oppression, and/or fraud, making him liable for punitive damages.

### THIRD CAUSE OF ACTION

### CONSTRUCTIVE FRAUD (against Moti)

71. Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

72. At all relevant times, Moti was the CEO of Lugano and owed fiduciary duties to Lugano.

73. Moti entered several Outside Contracts with third parties in which he solicited funds from the third parties to either acquire an interest in diamonds that Moti claimed Lugano already owned or to purchase diamonds with additional funds from Lugano, with the agreement that the parties would then share the profits from Lugano's later sale of that diamond.

74. Moti concealed the true nature of the Outside Contracts to Lugano by causing these transactions to be falsely recorded as sales in Lugano's books, causing the money received from the third parties to be falsely recorded as revenue in Lugano's books, and preventing the repayment obligations of the Outside Contracts from being properly recorded as obligations or liabilities in Lugano's books.

75.      Moti also presented forged sales documents and shipping records of empty shipments to Lugano to conceal the true nature of the Outside Contracts. To repay some of the third parties and avoid detection of his scheme, Moti funneled payments to third parties by misrepresenting to Lugano that these were legitimate business payments to a vendor and concealing the true purpose of these payments.

76.      Moti's varied efforts to conceal the Outside Contracts scheme confirm that he conducted the scheme without the knowledge of others at Lugano and that he knew his conduct was wrongful.

77.      Moti intended for Lugano to rely on these false misrepresentations designed to conceal the nature of the Outside Contracts.

78.      Lugano did, in fact, rely on these misrepresentations and was kept in the dark about the true nature of the Outside Contracts.

79.      Moti's failure to disclose accurate information regarding the Outside Contracts Lugano was a substantial factor in causing Lugano to now face numerous lawsuits from some of the third parties with whom Moti entered into Outside Contracts. Moti's failure to disclose accurate information regarding the Outside Contracts was a substantial factor in causing substantial reputational harm to Lugano.

80.      Separately, Moti caused numerous wire transfers totaling millions of dollars to go from Lugano's bank accounts to accounts belonging to the Haim Family Trust.

81.      Moti misrepresented to Lugano that these were legitimate business expenses by concealing that the Haim Family Trust was the true beneficiary for these wire transfers.

82.      Moti intended for Lugano to rely on the misrepresentations as to the true beneficiary of these wire transfers.

83.      Lugano did, in fact, rely on the misrepresentations as to the true beneficiary of these wire transfers.

84.      Moti's failure to disclose accurate information regarding the wire transfer was a substantial factor in causing Lugano to lose millions of dollars in fraudulent wire transfers.

85.      In his conduct described above, Moti acted with malice, oppression, and/or fraud, making him liable for punitive damages.

## FOURTH CAUSE OF ACTION

### BREACH OF FIDCUIARY DUTY (against Moti)

86.    Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

87.    At all relevant times, Moti was the CEO of Lugano and owed fiduciary duties to Lugano.

88.    Moti entered several Outside Contracts with third parties in which he solicited funds from the third parties to either acquire an interest in diamonds that Moti claimed Lugano already owned or to purchase diamonds with additional funds from Lugano, with the agreement that the parties would then share the profits from Lugano's later sale of that diamond.

89.    Moti concealed the true nature of the Outside Contracts to Lugano by causing these transactions to be falsely recorded as sales in Lugano's books, causing the money received from the third parties to be falsely recorded as revenue in Lugano's books, and preventing the repayment obligations of the Outside Contracts from being properly recorded as obligations or liabilities in Lugano's books.

90.    Moti also presented forged sales documents and shipping records of empty shipments to Lugano to conceal the true nature of the Outside Contracts. To repay some of the third parties and avoid detection of his scheme, Moti directed payments from Lugano to VAD, misrepresenting to Lugano that these were legitimate business payments to a vendor, and concealing the true purpose of these payments.

91.    Moti's varied efforts to conceal the Outside Contracts scheme confirm that he conducted the scheme without the knowledge of others at Lugano and that he knew his conduct was wrongful.

92.    Moti's conduct with respect to the Outside Contracts breached his fiduciary duties to Lugano.

93.    This breach of fiduciary duty was a substantial factor in causing Lugano to now face numerous lawsuits from some of the third parties with whom Moti entered into Outside Contracts. It was also a substantial factor in causing substantial reputational harm to Lugano.

94.    Separately, Moti caused numerous wire transfers totaling millions of dollars to go from Lugano's bank accounts to accounts belonging to the Haim Family Trust.

95.    Moti misrepresented to Lugano that these were legitimate business expenses by concealing that the Haim Family Trust was the true beneficiary for these wire transfers.

96. Moti's conduct with respect to the wire transfers sent to an account belonging to the Haim Family Trust breached his fiduciary duties to Lugano.

97. This breach of fiduciary duty was a substantial factor in causing Lugano to lose millions of dollars in fraudulent wire transfers.

98. Separately, Moti used his position as CEO to obtain a diamond on consignment from Scarselli and then steal the diamond to transfer to VAD.

99. Moti concealed from Lugano the consignment and subsequent diversion of the Scarselli Diamond to VAD.

100. Moti never returned the diamond to either Lugano or Scarselli.

101. Moti's conduct with respect to the Scarselli diamond breached his fiduciary duties to Lugano.

102. This breach of fiduciary duty was a substantial factor in exposing Lugano to potential liability for the stolen diamond to Scarselli.

103. In his conduct described above, Moti acted with malice, oppression, and/or fraud, making him liable for punitive damages.

## FIFTH CAUSE OF ACTION

### CIVIL THEFT (Penal Code § 496(c)) (against Moti)

104. Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

105. At all relevant times, Moti was the CEO of Lugano.

106. Moti caused numerous wire transfers totaling millions of dollars to go from Lugano's bank accounts to accounts belonging to the Haim Family Trust.

107. Moti intentionally concealed the true beneficiary of these wire transfers by misrepresenting to Lugano that these were legitimate business expenses and intentionally putting false beneficiary information in the documentation accompanying the wire transfers.

108. Moti's efforts to conceal the recipients and nature of these wire transfers confirm that he conducted the scheme without the knowledge of others at Lugano and that he knew his conduct was wrongful.

109.    Moti knew that he did not have any right to the money he obtained from Lugano through these fraudulent wire transfers.

110.    Moti's conduct reflects a specific intent to obtain money from Lugano under false pretenses.

111.    Through his conduct, Moti obtained property belonging to Lugano under false pretenses.

112.    Moti's conduct was a substantial factor in causing Lugano to lose millions of dollars in fraudulent wire transfers.

113.    In his conduct described above, Moti acted with malice, oppression, and/or fraud, making him liable for punitive damages.

## SIXTH CAUSE OF ACTION

## CONVERSION (against Moti)

114.    Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

115.    At all relevant times, Moti was the CEO of Lugano.

116.    Moti caused numerous wire transfers totaling millions of dollars to go from Lugano's bank accounts to accounts belonging to the Haim Family Trust.

117.    Moti intentionally concealed the true beneficiary of these wire transfers by misrepresenting to Lugano that these were legitimate business expenses and intentionally putting false beneficiary information in the documentation accompanying the wire transfers.

118.    Moti's efforts to conceal the recipients and nature of these wire transfers confirm that he conducted the scheme without the knowledge of others at Lugano and that he knew his conduct was wrongful.

119.    Lugano had ownership and a right to possess the money in its bank accounts.

120.    Moti was aware that Lugano had a right to possess the money in Lugano's bank accounts.

121.    Through his fraudulent wire transfers, Moti interfered with Lugano's right to possess the money in its bank accounts and instead wrongfully took possession of that money.

122.    Moti's conduct was a substantial factor in causing Lugano to lose millions of dollars in fraudulent wire transfers.

123.    In his conduct described above, Moti acted with malice, oppression, and/or fraud, making him liable for punitive damages.

### SEVENTH CAUSE OF ACTION

### MONEY HAD AND RECEIVED (against Moti)

124.    Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

125.    At all relevant times, Moti was the CEO of Lugano.

126.    Moti caused numerous wire transfers totaling millions of dollars to go from Lugano's bank accounts to accounts belonging to the Haim Family Trust.

127.    Moti intentionally concealed the true beneficiary of these wire transfers by misrepresenting to Lugano that these were legitimate business expenses and intentionally putting false beneficiary information in the documentation accompanying the wire transfers.

128.    Moti's efforts to conceal the recipients and nature of these wire transfers confirm that he conducted the scheme without the knowledge of others at Lugano and that he knew his conduct was wrongful.

129.    Through this conduct, Moti obtained money that was intended to be used for the benefit of Lugano.

130.    Moti took the money for himself and did not use it for the benefit of Lugano.

131.    Moti has not returned the money to Lugano and has been unjustly enriched as a result.

132.    Moti's conduct was a substantial factor in causing Lugano to lose millions of dollars in fraudulent wire transfers.

133.    In his conduct described above, Moti acted with malice, oppression, and/or fraud, making him liable for punitive damages.

### EIGHTH CAUSE OF ACTION

### CONVERSION (against VAD)

134.    Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

135.    Moti obtained the Scarselli Diamond from Scarselli by entering into a consignment agreement with Scarselli on behalf of Lugano, without Lugano's knowledge or consent. This consignment agreement gave Lugano a possessory interest in the Scarselli Diamond but obligated Lugano to return the Scarselli Diamond to Scarselli.

136.    VAD substantially interfered with Lugano's possessory interest in the Scarselli Diamond by taking possession of the Scarselli Diamond from Moti and then knowingly and wrongfully keeping possession of the Scarselli Diamond to date.

137.    Lugano did not consent to VAD keeping possession of the Scarselli Diamond.

138.    VAD's conduct was a substantial factor in exposing Lugano to potential liability for the stolen diamond to Scarselli.

139.    In its conduct described above, VAD acted with malice, oppression, and/or fraud, making it liable for punitive damages.

## NINTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACT (against VAD)

140.    Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

141.    Lugano had a valid consignment agreement with Scarselli whereby Scarselli was to give the Scarselli Diamond to Lugano on consignment and Lugano would either return the Scarselli Diamond or pay the value of the Scarselli Diamond to Scarselli.

142.    VAD has actual knowledge of Lugano's consignment agreement with Scarselli.

143.    VAD has knowingly and wrongfully retained possession of the Scarselli Diamond, which it received from Moti, which is preventing Lugano from returning the Scarselli Diamond to Scarselli and performing its obligations under the consignment agreement.

144.    VAD knows and intends that its conduct prevents Lugano from performing its obligations under the consignment agreement with Scarselli.

145.    Lugano has suffered harm because it has been exposed to potential liability to Scarselli.

146.    VAD's conduct is a substantial factor in causing this harm to Lugano.

147.    In its conduct described above, VAD acted with malice, oppression, and/or fraud, making it liable for punitive damages.

### TENTH CAUSE OF ACTION

### <u>VOIDABLE TRANSFER (Civil Code § 3439 *et seq.*) (against Moti)</u>

148.    Lugano realleges and incorporates by reference each and every allegation contained in the paragraphs set forth above.

149.    Lugano has a right to payment from Moti arising from Lugano's claims against Moti in this action.

150.    Moti was aware that his schemes were on the cusp of being discovered and knew that he would be liable to Lugano and others for millions of dollars.

151.    On or about June 17, 2025, Moti sold his California residence, located at 1501 Serenade Terrace, Corona Del Mar, California 92625, to Serenade Newport for about $7 million, which is less than its fair market value of $9 million.

152.    Moti sold his California residence for less than its fair market value because he had fled the United States to Israel and wanted to liquidate his assets and then transfer the proceeds from the sale out of the country as well.

153.    Serenade Newport is managed by an employee of the Daftarian Group, and on information and belief, the owners of the Daftarian Group, Paul and Lili Daftarian, are the members or beneficial owners of Serenade Newport. Paul and Lili Daftarian are friends with Moti and have participated in community events and fundraisers with Moti and Newport.

154.    On information and belief, Paul and Lili Daftarian were aware of Moti's impending legal issues and knew that he needed to quickly liquidate his assets. They took advantage of the situation by forming Serenade Newport and using it to acquire Moti's California residence for less than fair market value.

155.    Moti sold his California residence and transferred the proceeds to Israel with the specific intent to hinder, delay, or defraud his creditors.

156.    Lugano is harmed because Moti does not have sufficient assets in the United States to satisfy his obligations to Lugano.

157.    Moti's conduct was a substantial factor in causing Lugano's harm.

## **PRAYER**

WHEREFORE, Plaintiff Lugano prays against Defendants Moti, VAD, and the Doe Defendants for the following relief:

A.  Compensatory damages according to proof;

B.  Statutory damages, including treble damages, according to proof;

C.  Return of the Scarselli Diamond;

D.  Prejudgment interest according to proof;

E.  Punitive damages;

F.  Disgorgement of profits;

G.  Restitution;

H.  Attorney's fees and costs;

I.   Such other relief that the Court deems just and proper.

Dated: November 21, 2025

**BROWN, NERI, SMITH & KHAN LLP**

By _____
Amjad M. Khan

*Attorneys for Plaintiff Lugano Diamonds & Jewelry Inc.,*

Dated: November 21, 2025

**BARNES & THORNBURG LLP**

By _____
Garrett S. Llewellyn

*Attorneys for Plaintiff Lugano Diamonds & Jewelry Inc., by and through the Special Committee of the Board of Directors of Lugano Diamonds*

## DEMAND FOR JURY TRIAL

Plaintiff Lugano hereby demands trial of this matter by jury.

Dated: November 21, 2025                    **BROWN, NERI, SMITH & KHAN LLP**


By _____
    Amjad M. Khan

*Attorneys for Plaintiff Lugano Diamonds & Jewelry Inc.*



Dated: November 21, 2025                    **BARNES & THORNBURG LLP**


By _____
    Garrett S. Llewellyn

*Attorneys for Plaintiff Lugano Diamonds & Jewelry Inc., by and through the Special Committee of the Board of Directors of Lugano Diamonds*

**<u>PROOF OF SERVICE</u>**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 650 Town Center Drive, Suite 520, Costa Mesa, California 92626.

On November 21, 2025, I served true copies of the following document(s) described as:

**FIRST AMENDED COMPLAINT**

On the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address kaitlyn@bnsklaw.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 21, 2025, at Westminster, California.


Kaitlyn S. Alexander

## SERVICE LIST

**Lugano Diamonds & Jewelry Inc. v. Ferder, et al.**
**Case No. 30-2025-01492210-CU-CO-CJC**

Jeffrey Reeves                                              *Attorneys for Defendant*
Reeves & Weiss LLP
3333 Michelson Drive, Suite 300                             MORDECHAI FERDER, an individual acting on
Irvine, CA 92612                                            his own behalf, and in his capacity as Trustee of
JReeves@reevesandweiss.com                                 the Haim Family Trust
SSchuster@reevesandweiss.com