# EXHIBIT 2

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Lugano Diamonds & Jewelry Inc., *et al*.,[1] | Case No. 25-12055 (BLS) |
| | (Jointly Administered) |
| Debtors. | **Objection Deadline: February 13, 2026, at 4:00 p.m. EST) Hearing: March 3, 2026, at 1:30 p.m. (EST)** |

## MORDECHAI FERDER, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE OF THE HAIM FAMILY TRUST'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Mordechai Ferder, individually and in his capacity as Trustee of The Haim Family Trust ("**Ferder**" or "**Movant**"), files this Motion for Relief from the Automatic Stay ("**Motion**") seeking entry of an order, the form of which is attached at Exhibit A, and in support of the Motion states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1409. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### REQUESTED RELIEF

2. Movant is a Defendant in an action brought in the Superior Court of the State of California, County of Orange ("**State Court**") by Lugano Diamonds & Jewelry Inc., a California corporation, one of the jointly administered debtors in this case ("**Lugano Jewelry**", "**Plaintiff**"

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, CA 92660.

or "**Debtor**").  Movant seeks to lift the automatic stay imposed by § 362 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (as amended, "**Bankruptcy Code**") to permit him to assert compulsory counterclaims against Lugano Jewelry so the action may be fully and fairly defended and adjudicated.

## FACTUAL BACKGROUND

## AND PROCEDURAL HISTORY

3.      On June 24, 2025, Plaintiff, Lugano Jewelry filed an action against Ferder and VAD & Company, Inc. (sometimes collectively referred to as the "**State Court Defendants**") in the Superior Court of California, County of Orange, Case No. 30-2025-01492210-CU-CO-CJC ("**State Court Action**").  Lugano Jewelry filed an amended complaint in the State Court Action on November 26, 2025 ("**Amended Complaint**"), a copy of which is attached to the Declaration of Jeffrey Reeves ("**Reeves Decl.**") hereto as Exhibit 1.

4.      The State Court Action is an action commenced by the Debtor against its former Chief Executive Officer, Ferder, and others, alleging Ferder purportedly engaged in schemes outside of the Debtor's business to allegedly "steal" millions of dollars from the company.  The causes of action alleged in the Amended Complaint are: (1) Fraud; (2) Concealment; (3) Constructive Fraud; (4) Breach of Fiduciary Duty; (5) Civil Theft (California Penal Code § 496(c); (6) Conversion (against Ferder); (7) Money Had and Received; (8) Conversion (against VAD); (9) Intentional Interference with Contract; and (10) Voidable Transfer (California Civil Code § 3439, *et seq*.). Every one of these causes of action involves purely state law issues.

5.      Ferder vehemently denies the allegations set forth in the Amended Complaint and other pleadings filed in the case.  In order to fully adjudicate these allegations, Ferder must be allowed to fully defend himself, including, but not limited to, having the ability to bring compulsory counterclaims against Lugano Jewelry and others.

6. On November 16, 2025 ("**Petition Date**"), the following Chapter 11 cases were filed in the United States Bankruptcy Court for the District of Delaware ("**Delaware Bankruptcy Court**"): Lugano Buyer, Inc., Case No. 25-12052 (BLS); K.L.D. Jewelry, LLC, Case No. 25-12053 (BLS); Lugano Prive, LLC, Case No. 25-12054 (BLS); Lugano Diamonds & Jewelry Inc., Case No. 25-12055 (BLS); and Lugano Holding, Inc., Case No. 24-12056 (BLS) (collectively "**Lugano Bankruptcy Cases**"). Reeves Decl., Exhibit 3. The Lugano Bankruptcy Cases are jointly administered by the Delaware Bankruptcy Court by order entered November 18, 2025. The decision to file in Delaware, instead of Orange County, California, Lugano's operational home, is predicated on the filing of an affiliate incorporated in Delaware. Reeves Decl., Exhibit 3, at 3.

7. On December 22, 2025, Plaintiff Lugano Jewelry filed *Plaintiff Lugano Diamonds & Jewelry Inc.'s Notice of Removal; Demand for Jury Trial* ("**Notice of Removal**") removing the State Court Action from the Orange County Superior Court in California to the United States District Court, Central District of California ("**California District Court**"), the pending action captioned *Lugano Diamonds and Jewelry, Inc. v. Ferder, et. al.*, Case No. 30-2025-01492210-CU-CO-CJC ("**State Court Action**" or "**Removed Action**"), which upon removal was assigned Case No. 2:25-cv-12108 by the California Central District Court and then subsequently transferred to the California Central District Court, Southern Division, and assigned Case No. 8:25-cv-02845-FWS (JDEx). Reeves Decl. ¶ 7, Exhibit 4.

8. Concurrently with the filing of this Motion, Ferder is filing a Motion to Abstain from Hearing State Court Action, or in the Alternative, to Remand Removed Action ("**Remand Motion**"), in which Ferder requests that the California District Court remand the Removed Action back to the Orange County Superior Court pursuant to the mandatory abstention provisions set

forth in 28 U.S.C. § 1334(c)(2) or alternatively upon equitable grounds warranting remand pursuant to 28 U.S.C. § 1452.  Reeves Decl. ¶ 11.

9.    Although not required to do so because Ferder has not yet responded to the Amended Complaint, Ferder as a precautionary measure, filed a Bankruptcy Rule 9027(e)(3) statement with the California District Court in which he confirms that the Removed Action is non-core and that Ferder does not consent to entry of final orders and judgment by the bankruptcy judge.  Reeves Decl. ¶ 12.

10.   Pursuant to California District Court Local Rule 7-3, counsel for Ferder conferred with counsel for Lugano by telephone on January 14, 2026 regarding the State Court Action and the Notice of Removal.  The parties were unable to resolve the issues, necessitating the filing of this Motion.  On January 16, 2026, Ferder and Plaintiff entered into a *First Stipulation Re: Responsive Pleading Deadline for Defendant Mordechai Ferder and Briefing Schedule for Motions to Transfer and Remand* ("**Stipulation**") in which the parties agreed, subject to the California District Court's approval, to a briefing schedule for the filing of the Remand Motion, a motion for relief from the automatic stay ("**Stay Motion**") and Plaintiff's motion to transfer the California District Court Action to this Court ("**Transfer Motion**") by January 27, 2026, opposition by February 17, 2026, and replies by March 3, 2026.  Reeves Decl. ¶ 9.  On January 20, 2026, the California District Court entered an *Order Re First Stipulation Regarding Responsive Pleading Deadline for Defendant Mordechai Ferder and Briefing Schedule for Motions to Transfer and Remand* ("**District Court Order**").  Pursuant to the District Court Order, Mr. Ferder's responsive pleading is due on or before March 6, 2026. Reeves Decl. ¶ 10, Exhibit 5.

11.   Ferder founded Lugano Diamonds in Newport Beach, California in 2005, starting with a single Newport Beach salon, which blossomed into a respected brand generating more than

$30 million in annual operating income by 2021.  In 2021, Compass Diversified Holdings, Inc. ("**Compass**"), a publicly traded company, recognized Lugano's potential and bought 60% of Ferder's beneficially held 100% stake in the company.  Ferder stayed on as CEO pursuant to an Employment Agreement entered into by and between Lugano and Ferder dated September 3, 2021 ("**Employment Agreement**").  Reeves Decl. ¶ 3, Exhibit 2.  The Employment Agreement contains a clear, mandatory forum-selection and choice-of-law clause:

> Choice of Law; Venue. All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and the exhibits and schedules hereto shall be governed by, and construed in accordance with, the **laws of the State of California**, without giving effect to any choice of law or conflict of law rules or provisions (whether the State of California or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of California. **All disputes relating to this Agreement, Executive's employment or other service with the Company** or any of its Subsidiaries or affiliates or the termination thereof shall be heard in the state or federal courts **located in Orange County, California**.
> *[Emphasis added]*

Reeves Decl., Exhibit 2 at 12.

12.     In order to raise the capital necessary to buy inventory, meet payroll, fund marketing, pay creditors and accounts payable obligations of Lugano Jewelry, financing arrangements  ("**Diamond Contracts**") were entered into by and between Lugano Jewelry and various wealthy individuals ("**Diamond Contractors**") wherein the clients provided funds to Lugano Jewelry with an extremely high guaranteed return on that money over a very short time.

13.     There are a total of eight state court actions[2] currently pending before the State Court (including the State Court Action).  Although the State Court Action is the only action in

---

[2] *Bryan Gadol v. Mordechai Ferder*, Case No. 30-2025-01488102-CU-BC-CJC (stay filed by Lugano); *Raymond W. Cohen v. Lugano Diamonds & Jewelry Inc.*, Case No. 30-2025-01490111-CU-BC-CJC; *Ken Kraus v. Lugano Diamonds & Jewelry, Inc.*, Case No. 30-2025-014901065-CU-BC-CJC (stay filed by Lugano); *Barry Aronoff v. Mordechai Ferder*, Case No. 30-2025-01490509-CU-FR-CJC (stay filed by Lugano); *Lugano Diamonds & Jewelry Inc. v. Mordechai Ferder*, Case No. 30-2025-01492210-CU-CO-CJC; *Avina LLC v. Lugano Diamonds & Jewelry, Inc.*, Case No. 30-2-25-1495834-CU-FR-CJC; *The Arvielo Family Trust v. Lugano Diamonds & Jewelry Inc.*, Case No. 30-2025-01506931-CU-BC-CJC (stay

which Lugano Jewelry is the plaintiff, each of the eight actions involve materially the same core set of facts and arise out of certain Diamond Contracts that are at issue in the State Court Action filed by Plaintiff. Reeves Decl. ¶ 4. In the remaining seven State Court actions, Lugano Jewelry is a defendant in all but one, the *Bryan Gadol* action, which names Simba IL Holdings, LLC ("**Simba Holdings**") instead of Lugano Jewelry as a defendant.[3] Simba Holdings is the 40% equity interest holder of Lugano Holding, Inc. (one of the debtors in the jointly administered Lugano bankruptcy cases). Lugano Jewelry has filed notices of stay of proceedings due to the Lugano bankruptcy cases in five of the actions in which it is a defendant. *Id*. Here again, the complaint filed against Simba Holdings involves the same core facts.

14.     Ferder has a number of defenses to the State Court Action, including, but not limited to: (i) Lugano Jewelry is the primary obligor on all of the Diamond Contracts, not Ferder; (ii) Ferder's conduct can and should be imputed to Lugano Jewelry because he acted in his capacity as CEO when entering into the Diamond Contracts; and (iii) unclean hands – Ferder did not act alone, and other higher ups at Lugano Jewelry, including Josh Gaynor, and at Compass, were aware of the financing arrangements that were being used and enjoyed the benefits of those arrangements when it suited them. Reeves Decl. ¶ 13.

15.     Further, Ferder has his own affirmative claims against Lugano Jewelry, Joshua Gaynor (Lugano Jewelry's interim CEO), Compass, and Elias Sabo (CEO of Compass) for, among other things: (i) defamation per se against Lugano Jewelry, Gaynor, Compass and Sabo for statements accusing Ferder of embezzlement, fraud and theft; (ii) breach of contract against

---

filed by Lugano) (Judge Manssourian); and *Champion Force Industrial Limited v. Lugano Diamonds & Jewelry Inc.*, Case No. 30-2025-01499613-CU-BC-CJC (Stay filed by Lugano) (Judge Leal).

[3] On September 16, 2025, Simba Holdings also filed a voluntary petition for chapter 11 bankruptcy in the Central District of California Bankruptcy court.

Lugano Jewelry for failure, as the primary obligor on the Diamond Contracts, to resolve them, and for Ferder's expenses in litigation as a result of Lugano Jewelry's failure to honor its obligation to satisfy the Diamond Contracts; (iii) intentional interference with contractual relations against Compass and Sabo for undermining, and causing the termination of, the employment agreement and shareholder relationship between Mr. Ferder and Lugano Jewelry; (iv) intentional interference with prospective economic advantage against Compass and Sabo for interfering with the sale of Lugano Jewelry to a prospective purchaser of Lugano Jewelry, depriving Ferder and other shareholders of the substantial economic benefit that would have been realized from that sale; (v) breach of fiduciary duty against Sabo and breach of the implied covenant of good faith and fair dealing against Lugano and Compass as its majority shareholder; (vi) equitable indemnity against Lugano Jewelry and Compass for all monetary expenses Ferder has had to suffer for being called upon to satisfy Lugano Diamond's obligations; (vii) California Labor Code claims under Cal. Lab. Code §§ 2802 and 201-203 against Lugano Jewelry for wrongful termination, indemnity, reimbursement for business expenses, and for unpaid salary and accrued bonuses; and (viii) declaratory relief against Compass, Sabo, and Gaynor regarding Lugano Jewelry's liability for all obligations arising under the Diamond Contracts, and Lugano Jewelry's obligation to indemnify Ferder for all funds he has expended to cover company expenses and to defend himself. Reeves Decl. ¶ 14.

## BASIS FOR REQUESTED RELIEF

### I.    CAUSE EXISTS UNDER § 362(d)(1) TO LIFT THE AUTOMATIC STAY

16.    By this Motion, Ferder requests that the Court grant Ferder relief from the automatic stay to permit a full and fair opportunity to defend himself, including the adjudication of the parties' respective rights in the State Court Action, by permitting Ferder to file and prosecute compulsory counterclaims.  No relief is sought against the Debtor at this time to collect any

monetary award in favor of the Defendant in the State Court Action except to the extent Ferder
may offset or recoup any such award in his favor against any award in favor of Lugano Jewelry.
Otherwise, relief from the automatic stay is sought solely to allow the State Court Action to be
fully and fairly adjudicated.

17.     Section 362(a)(1) operates as a stay of "the commencement or continuation … of a
judicial, administrative, or other action or proceeding against the debtor that was or could have
been commenced before the commencement of the case under this title, or to recover a claim
against the debtor that arose before the commencement of the case under this title." § 362(a)(1).

18.     The automatic stay "is not meant to be absolute, and in appropriate instances relief
may be granted." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). Section 362(d)(1)
provides that a court shall grant relief from the stay "for cause, including the lack of adequate
protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Allowing
prepetition litigation to continue in its original forum can constitute cause. See *In re SCO Grp.,
Inc.*, 395 at 857 ("Relief from the stay may be granted 'when necessary to permit litigation to be
concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is
ready for trial." (quoting Lawrence P. King, *Collier on Bankruptcy* § 362.07[3][a] (15th ed. 2006));
*In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 218
(Bankr. D. Del. 1995) ("[T]he existence of a more appropriate forum than the bankruptcy court is
'cause' for relief under Code § 362(d)(1)").

19.     "Whether to terminate, modify, condition, or annul the bankruptcy stay under §
362(d) is within the discretion of the bankruptcy court." *In re Lincoln*, 264 B.R. 370, 372 (Bankr.
E.D.Pa. 2001). The standard for cause is "a flexible one" that requires courts to engage in a "case-

by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. at 856.

20.     In a motion for relief from the automatic stay, the movant must establish a prima facie case that "cause" exists, at which point the burden shifts to the non-moving party to show that lifting the stay would cause harm. See *Matter of Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D. Del. 1996) ("[Creditor] has the initial burden in proving a prima facie case of cause, which if proved, must be rebutted by [debtor] if the stay is not to be lifted."); *In re Abeinsa Holding, Inc.*, 2016 WL 5867039, at *3 ("[T]he burden to resist lifting of the stay rests entirely with the Debtor...The statute, by its burden shifting, seems almost . . . to ask, 'why shouldn't the stay be lifted?' . . . It is not [Movant's] burden to show that the Debtor[] would not be harmed by stay relief.").

## II.    RELIEF FROM THE AUTOMATIC STAY IS APPROPRIATE TO PERMIT FERDER TO ASSERT COMPULSORY COUNTERCLAIMS IN THE STATE COURT ACTION

21.     "The purpose of the automatic stay provision is to afford the debtor a 'breathing spell' by halting the collection process.  It enables the debtor to attempt a repayment or reorganization plan with an aim toward satisfying existing debt." *In re Siciliano*, 13 F.3d 748, 750 (3rd Cir. 1994).  This policy does not apply where a party's request for relief is "defensive in nature.' *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993).

22.     It is appropriate to lift the stay to allow a counterclaim to be asserted, particularly where the counterclaim is compulsory.  *In re Countryside Manor, Inc.*, 188 B.R. 489, 28 Bankr. Ct. Dec. (CRR) 170, Bankr. L. Rep (CCH) ¶ 76767 (Bankr. D. Conn. 1995).  In *Countryside Manor*, the court lifted the automatic stay to allow a counterclaim to be filed against the chapter 11 debtor in state court.  Refusal to lift stay would prejudice counterclaimants because they would be unable to assert claim in state court, and there would be no hardship to the estate if counterclaim

9

was liquidated in state court.  See also, *In re Millsap*, 141 B.R. 732 (Bankr. D. Idaho 1992) (stay should be lifted in most instances where counterclaim is compulsory). "A creditor is entitled to relief from the automatic stay to assert a counterclaim in debtor initiated non-bankruptcy proceedings in most instances as a matter of right considering the compulsory nature of most counterclaims under rules of civil procedure." *Id*. at 733.

23.     In this case, denying relief from the automatic stay to Ferder to pursue his offsetting counterclaims against the Debtor and others will have the fundamentally unfair effect of denying Ferder his full range of defenses in litigation brought by the Debtor. Further, because the counterclaims are compulsory in nature pursuant to California's entire controversy doctrine, they could be forever lost unless litigated in the State Court Action.

24.     In California, to assert claims for affirmative relief against the plaintiff, a co-defendant, or a third party, defendants must use a cross-complaint.  *Cal. Civ. Proc. Code* § 428.10. A cross-complaint may assert any cause of action against the plaintiff and may bring a cause of action against a co-defendant or non-party if the cause of action either:

      a.     Arises out of the same transaction, occurrence, or series of transactions or occurrences as the original cause of action.

      b.     Asserts a claim, right, or interest in the property or controversy that is the subject of the original cause of action.

*Cal. Civ. Proc. Code* § 428.10(b)

25.     Further, cross-complaints are mandatory for a related cause of action that is both:

      a.     Related to the subject matter.

      b.     In existence at the time of the original complaint.

*Cal. Civ. Proc. Code* § 428.30(a)

26.     "Related cause of action" means that the cause of action arises out of the same transaction, occurrence, or series of transactions or occurrences as the original cause of action. *Cal. Civ. Proc. Code* § 428.10(c)

27.     Cross-complaints are independent actions and documents filed separately from the answer.  *Cal. Civ. Proc. Code* § 428.40.   Cross-complaints are used in California because affirmative relief may not be claimed in the answer.  *Cal. Civ. Proc. Code* § 428.50(a).   Defendants may file a cross-complaint against a plaintiff before or at the same time as an answer as a matter of right.  *Cal. Civ. Proc. Code* § 428.50(a).   A defendant must seek leave of court to file a cross-complaint against the plaintiff if they have already filed the answer.   The court may grant leave "in the interest of justice" at any time during the action.  *Cal. Civ. Proc. Code* § 428.50(c).

28.     Ferder has been accused of fraud, theft, conversion and concealment.   *See*, Amended Complaint, Reeves Decl., Exhibit 1.   Ferder intends to prove in support of his equitable indemnity and other counterclaims that the financing arrangements that the Debtor and Compass have now maligned as improper were both common practices in the private luxury jewelry industry and the proceeds from those arrangements were reflected in Lugano Jewelry's records.   Both Compass (the parent company and 60% owner of Lugano Jewelry) and Lugano Jewelry were aware of these arrangements, and they left them in place so they could enjoy the operational and other benefits that flowed up to Compass.   Ferder further intends to show in support of his counterclaims, including for defamation per se, that Lugano Jewelry was a party to, and obligor on, the Diamond Contracts, and that no proceeds from these financing arrangements went to Ferder.   Ferder expects the evidence to show that the proceeds from these financing arrangements all went to Lugano Jewelry and were used for Lugano Jewelry business purposes, including to buy inventory, meet payroll, fund marketing, pay creditors, and satisfy accounts payable obligations of

Lugano.  Without the ability to bring a cross-complaint against Lugano Jewelry and others, Ferder
will be denied due process and the ability to fully defend himself.

29.    The State Court Action currently consists of three parties, the Debtor, as plaintiff,
and Ferder and VAD & Company, Inc., as defendants. As mentioned above, Ferder intends to file
no fewer than eight separate counterclaims, not only against Lugano Jewelry, but also against
Compass, Elias Sabo and Joshua Gaynor. Messrs. Gaynor and Sabo both reside and/or work in
Orange County, California where the State Court action was filed.  Reeves Decl. ¶ 16.  In addition,
third party witnesses, primarily located in California, will also be called to testify in the State Court
Action.  *Id.*

30.    In this case, denying Ferder relief from the automatic stay to pursue his offsetting
and compulsory counterclaims against the Debtor and others will have the fundamentally unfair
effect of denying Movant his full range of defenses in litigation brought by the Debtor. Further,
because the counterclaims are compulsory in nature pursuant to California's entire controversy
doctrine, they could be forever lost unless litigated in the State Court Action. A consideration of
the impact of the stay on the parties and balance of harms weighs strongly in favor of granting
Movant relief from the automatic stay.

### III.    THE  BALANCE  OF  HARDSHIPS  FAVORS  RELIEF  FROM  THE AUTOMATIC STAY

31.    In considering whether there is "cause" to lift the automatic stay in circumstances
where a pre-petition dispute is pending in another forum, Delaware Bankruptcy Courts have
looked to whether: "a) [a]ny great prejudice to either the bankrupt estate or the debtor will result
from continuation of the civil suit, b) the hardship to the [non-bankrupt party] by maintenance of
the stay considerably outweighs the hardship of the debtor, and c) the creditor has a probability of
prevailing on the merits."  *Izzarelli v. Rexene* (*In re Rexene Products Co.*), 141 B.R. 574, 576

12

(Bankr. D. Del. 1992) (internal citations omitted); *In re SCO Group*, 395 U.S. at 857. In addition to these primary factors, courts also consider, among other things, whether the alternative forum is a specialized tribunal with the necessary expertise to adjudicate the claims and whether the interests of judicial economy will be served by the resolution of the litigation in its original forum. See *In re SCO Group*, 395 U.S. at 857; see also *Rexene*, 141 B.R at 577.

32.     Each of the three factors weighs in favor of granting Movant's relief from the automatic stay.  *First*, lifting the stay will not prejudice the Debtor's administration of these cases or plan of reorganization.  *Second*, the balance of hardships weighs in favor of allowing Ferder to fully participate in the State Court Action in the State Court.  *Third,* Movant can meet the slight threshold in showing probability of success on the merits.

A.     **Continuation of the State Court Action in the State Court Will not cause Great Prejudice to the Bankruptcy Estate or the Debtors.**

33.     When determining whether to lift the automatic stay courts first consider "[whether] any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit." *Rexene*, 141 B.R. at 576. Courts will find great prejudice to the debtor if allowing litigation to proceed will further deplete the bankrupt estate, hinder the reorganization process, or be more burdensome to debtor than litigating in the bankruptcy court. See *In re Aleris Intern*, 456 B.R. 35, 48 (Bankr. D. Del. 2011) (denying creditor's motion for relief from the automatic stay because lifting the stay would "cause the Debtor severe hardship and . . . affect its ability to consummate an effective reorganization."); *In re Downey Financial Corp.,* 428 B.R. 595 (Bankr. D. Del. 2010) (finding that debtor would not suffer great prejudice if the automatic stay was lifted because the assets of the estate would not be substantially reduced); *In re SCO Group*, 395 B.R. at 858 (holding that debtor would not suffer great prejudice by lifting the stay because to restart the

litigation in the bankruptcy court would be more burdensome than allowing the longstanding district court litigation to proceed). Here, the Debtor cannot establish any conceivable prejudice, let alone great prejudice, from lifting the stay.

34.     The Debtor is the plaintiff in the State Court Action and is the party that is seeking affirmative relief against Ferder and others for the benefit of the estate. Continuation of the State Court Action commenced by the Debtor will not cause prejudice to the bankruptcy estate or the Debtors.

35.     The Debtor's chapter 11 case was filed on November 16, 2025. The Debtor and its related debtors (collectively "**Related Debtors**") are actively moving their chapter 11 cases forward. The Related Debtors filed first day motions and have moved to employ professionals necessary to administer the estates, including a CRO, an investment banker, an administrative agent and Debtors' counsel and co-counsel. In the short time that it has been pending, the Debtors have already obtained Bankruptcy court approval of a sale of substantially all of the Related Debtors' assets. Lifting the automatic stay to allow Ferder to fully adjudicate the State Court Action will not impede the Related Debtors' progress in moving these chapter 11 cases towards conclusion. Moreover, the Debtor is already prosecuting the State Court Action. The claims in the counterclaims arise out of the same facts that are already at issue in the State Court Action.

36.     On balance, Ferder will be irrevocably harmed if he is unable to fully defend himself in the State Court Action and assert claims against the Plaintiff and others.  In his counterclaims, if he is permitted to file them, Ferder will demonstrate that he acted at all times on behalf of Lugano Jewelry. Lugano Jewelry cannot disavow the knowledge and actions of its own CEO while simultaneously claiming he acted for the company. With respect to Compass, as the majority shareholder of Lugano Jewelry and holder of all but two board seats, Compass had an

obligation to exercise diligence and oversight into Lugano. Compass will either be shown to have had actual knowledge of the financing arrangements being used at Lugano, or a complete lack of corporate governance and rigor in its management of the company, not to mention failure to adhere to the federal securities laws that govern Compass's duty to ensure the accuracy of its public SEC filings. The duty to its shareholders to monitor and implement adequate controls is Compass's alone.

37.     Granting relief from the automatic stay will not interfere, jeopardize, or delay the bankruptcy proceedings, but will instead allow for a complete adjudication of the parties' claims in the State Court Action. Continuation of the State Court Action will not cause interference with the Debtors' bankruptcy cases.

**B.      Any Prejudice to Debtor is Substantially Outweighed by the Harm to Movant Caused by Continuation of the Automatic Stay and Movant's Inability to Fully Defend in the State Court Action**

38.     The second factor balances the hardship to Movant in continuing the stay with the hardship to the Debtor in lifting the stay. *Rexene*, 141 B.R. at 577.

39.     As discussed above, Ferder intends to file no fewer than eight separate counterclaims, not only against the Plaintiff, but also against Compass, Elias Sabo and Joshua Gaynor. Ferder's claims against Lugano are compulsory, and as such they will be lost if he is not permitted to raise them in the State Court Action. In addition to the defenses that Ferder has against Lugano's claims (inability of a company to sue its own agent for conduct that solely benefited the company and Lugano's knowledge of the Diamond Contracts), Ferder has significant counterclaims against Lugano and Mr. Gaynor in his individual capacity for defamation. Ferder intends to show that Mr. Gaynor made defamatory statements against Ferder, and that Mr. Gaynor

15

knew those statements were false, and he made them with the intent of deflecting responsibility from Lugano and himself.  Reeves Decl. ¶ 14. They constitute *per se* defamation under California law, causing irreparable harm to Ferder.  See, *Draper v. Hellman Com. Tr. & Sav. Bank*, 203 Cal. 26, 34 (1928) (finding allegations of fraudulent misappropriation are libelous per se).   Ferder also has claims for breach of fiduciary duty against Sabo and breach of the implied covenant of good faith and fair dealing against Lugano and Compass, as its majority shareholder.  Reeves Decl. ¶ 14.

### C.    Movant has a Probability of Prevailing on the Merits

40.    "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Cont'l Airlines, Inc.*, 152 B.R., at 426; see also *Rexene*, 141 B.R. at 578 ("The required showing is very slight."). It "merely requires a showing that [the movant's] claim is not frivolous." *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund L.P.* (*In re Levitz*), 267 B.R. 516, 523 (Bankr. D. Del. 2000).

41.    Here, Movant has more than a reasonable probability of succeeding on the merits. At all times in question in the State Court Action, Ferder acted solely in his capacity as CEO of Lugano.   Ferder expects the evidence to show that the proceeds from the financing arrangements all went to Lugano and were used for Lugano business purposes, including to buy inventory, meet payroll, fund marketing, pay creditors, and satisfy accounts payable obligations of Lugano. Further, Lugano was a party, and obligor on, the Diamond Contracts.  Claims of ignorance by Compass, the 60% controlling shareholder of Lugano are simply not credible.  Compass knew of the financing and inventory practices that Lugano was using from the beginning.  Compass was aware of the practices it now conveniently calls "misconduct" but left them in place.  Lugano was content to profit from the Diamond Contracts, but as soon as the Diamond Contractors began filing actions, Lugano and Compass faced a choice:  they could either work with Ferder to manage the

alleged shared liability or scapegoat the founder of Lugano – Ferder.  Unfortunately, Lugano chose

the latter, filing a public complaint – the State Court Action – filled with inflammatory and false

allegations, which only made matters worse, raised more red flags, and provided more incentive

for Diamond Contractors to sue.

42.     These facts are more than sufficient to demonstrate a probability of success on the

merits and weigh in favor of lifting the automatic stay.

## IV.     ADDITIONAL FACTORS CONSIDERED BY COURTS IN GRANTING RELIEF TO PROCEED IN ANOTHER FORUM WEIGH IN FAVOR OF GRANTING MOVANT RELIEF FROM STAY

43.     General policies underlying the automatic stay are also considered, as outlined by

the United States Court of Appeals for the Second Circuit in *In re Sonnex Indus., Inc. v. Tri*

*Component Prods. Corp.*, 907 F.2d 1280, 1287 (2d Cir. 1990), citing *In re Curtis*, 40 B.R. 795

(Bankr. D. Utah 1984).  These factors are:  (1) whether relief would result in resolution of the

issues; (2) lack of interference with bankruptcy case; (3) whether other proceeding involves debtor

as fiduciary; (4) whether there is specialized tribunal to hear cause of action; (5) whether debtor's

insurer is defending it; (6) whether action primarily involves third parties; (7) whether litigation in

another forum would prejudice other creditors; (8) whether judgment claim arising from other

action is subject to equitable subordination; (9) whether other proceeding would result in judicial

lien avoidable by debtor; (10) interests of judicial economy; (11) whether parties are ready for trial

in other proceeding; and (12) impact of stay on the parties and balance of harms.  *Id*. at 1286.

44.     The considerations are the same regardless of whether the issue is whether to allow

the filing of a counterclaim against the debtor, as opposed to whether to modify the stay in order

to allow a party to proceed with a state court action against a debtor.  *In re Countryside Manor*,

188 B.R. at 491.  In *Countryside Manor*, the court lifted the automatic stay to allow a counterclaim

to be filed against the chapter 11 debtor in state court. *Id*. at 492. Refusal to lift stay would prejudice

17

counterclaimants because they would be unable to assert claim in state court, and there would be no hardship to the estate if counterclaim was liquidated in state court.

45.      As demonstrated below, although not all of these factors apply to this case, those factors that do apply weigh heavily in favor of lifting the automatic stay to permit Ferder to bring compulsory counterclaims present all of his defenses and permit a full adjudication of the parties' respective rights in the State Court Action.

**1.      Relief from Stay Will Result in Complete Resolution of the Issues**

46.      Here, there are eight actions, including the State Court Action, currently pending before the State Court, each involving the same core set of facts and all stemming from the Diamond Contracts.  The only obstacle preventing Ferder from the ability to fully adjudicate the State Court Action is the automatic stay. Permitting relief from the automatic stay as requested herein will allow the State Court to completely resolve and determine the merits of all claims by way of a final decision and award by the State Court.  This first factor weighs strongly in favor of relief from stay.

47.      As discussed above, the Debtor is the Plaintiff in the State Court Action and is actively litigating. The Debtor is not stayed from pursuing its claims against Ferder and others. While Ferder is not stayed from filing an answer, it is less clear as to whether the stay prevents Ferder from filing compulsory counterclaims seeking affirmative relief against the Debtor. Although the Plaintiff's counsel wondered during the meet and confer discussion on January 14, 2026, whether the stay prevents the Defendant from filing compulsory counterclaims, the Plaintiff nevertheless refused to stipulate to stay relief, thereby necessitating this Motion. Reeves Decl. ¶ 9. The Motion seeks relief out of an abundance of caution in response to the Plaintiff's refusal to stipulate in the hope of avoiding a potential stay violation and circumventing any argument by the

Plaintiff to that end (as well as avoiding the attendant delay and cost associated with any such potential stay violation). Granting Ferder relief from the automatic stay to pursue his claims will ensure a complete resolution of the issues presented by the State Court Action.

**2. The State Court Action Has No Connection with the Bankruptcy Case and Granting Relief from the Automatic Stay Will Not Interfere with the Bankruptcy Case**

48. The State Court Action involves California State law claims, and by the Debtor's own judicial admission, the action is a "non-core" proceeding within the meaning of 28 U.S.C. § 157(c). The State Court Action is a case commenced by the Debtor against its former Chief Executive Officer, Ferder, and others, alleging that Ferder engaged in schemes outside of Lugano Jewelry's business to allegedly "steal" millions of dollars from the company. Each of the causes of action set forth in the Amended Complaint involves purely state law issues. None of these issues have any connection with the Related Debtors' bankruptcy cases and, as discussed above, granting relief from stay will not interfere with the bankruptcy cases.

49. Granting relief from the automatic stay will not interfere, jeopardize, or delay the bankruptcy proceedings, but will instead allow for a complete adjudication of the parties' claims in the State Court Action. Continuation of the State Court Action will not cause interference with the Debtors' bankruptcy cases. The second factor weighs in favor of granting relief from stay.

**3. The State Court Action Does Not Involve the Debtor as Fiduciary**

50. This third factor is inapplicable as the State Court Action does not involve the Debtor as a fiduciary of another entity.

**4. The State Court is Familiar with the Parties and Issues Raised by the State Court Action and is the Proper Tribunal to Hear the State Court Action**

51. As stated, there are eight other state court cases, six pending before Judge Fish, and all actions materially involve the same set of core facts arising out of the Diamond Contracts.

Lugano Jewelry is a defendant in seven of the eight actions, with Simba IL Holdings, LLC, another related chapter 11 debtor, being the defendant in the eighth action. The State Court is familiar with the State Court Action and is well-suited to hear Ferder's defenses and counterclaims. Further, all of the causes of action in the State Court Action involve purely state law issues.

52.     The State's Court's familiarity with the State Court Action and the other pending related actions weighs in favor of the State Court as the most efficient forum to adjudicate the claims. Given the State Court's engagement with these actions, it is the proper forum to continue hearing these claims. This fourth factor thus strongly weighs in favor of relief from stay.

### 5.   The Debtor Does Not Appear to Have Insurance Coverage

53.     The fifth factor involves an inquiry into whether a debtor's insurance carrier has assumed full financial responsibility for defending the litigation. The Debtor has not informed Ferder whether it has insurance coverage for the claims disputed in the State Court Action.   The Debtor is the plaintiff in the State Court Action seeking damages against Ferder. This factor does not appear to be relevant to this inquiry.

### 6.   The State Court Action Involves Third Parties

54.     The State Court Action involves Debtor Lugano Jewelry as plaintiff and Ferder and VAD & Company, Inc. as defendants. Ferder intends to defend himself by asserting compulsory counterclaims and third-party claims. These defenses and counterclaims of Ferder involve third parties who are non-debtors. Additionally, witnesses that Ferder intends to call in his defense and in support of his counterclaims are located in California where the State Court Action is pending. The presence of third parties in the State Court Action pursuant to this sixth factor weighs in favor of relief from stay.

**7. Permitting the State Court Action to Proceed Will Not Prejudice Other Creditors**

55.     Litigation of the State Court Action in the State Court will not prejudice other creditors of the estate. The Debtor is seeking to recover significant damages against the State Court Defendants, which would inure to the benefit of creditors of the estate. Granting relief from the automatic stay to allow the State Court Action to be fully adjudicated in a forum that is versed in the facts and issues before it is the most expeditious manner of reaching a timely determination of the parties' respective rights under the State law issues. Further, Ferder is not seeking relief from stay to collect against the Debtor. This seventh factor weighs in favor of granting relief from stay.

**8. Equitable Subordination**

56.     The Debtor is seeking judgment against Ferder, its former Chief Executive Officer, and others. Any judgment obtained by the Debtor against Ferder would not be a claim against the Debtor's bankruptcy estate, and therefore, not subject to equitable subordination. As such, this eighth factor is inapplicable. To the extent Ferder is granted relief from the automatic stay to fully present his defenses to the State Court Action, if successful, this would reduce any such judgment. To the further extent that Ferder establishes no liability or damages owing to the Debtor, Ferder is not seeking stay relief at this time to enforce any monetary judgment he may obtain against the Debtor. The claims simply needs to be liquidated and in order to do that, Ferder needs to be able to fully present all defenses, including compulsory counterclaims.

**9. Ferder is Not Seeking Relief From Stay to Enforce a Judgment or Otherwise Obtain an Avoidable Judicial Lien**

57.     Ferder merely seeks to fully adjudicate and liquidate the claims raised in the State Court Action. To the extent Ferder fully defeats the Debtor's claims and obtains a judgment against the Debtor, Ferder is not seeking stay relief at this time to enforce or otherwise collect against the

Debtor or the estate without further order of this Court (except to the extent permitted to setoff or recoup such amount). This ninth factor is inapplicable.

**10. Judicial Economy and the Expeditious and Economical Resolution of Ferder's Claims Favors Granting Relief From Stay**

58.     It is in the interest of judicial economy to allow these actions to continue in the State Court before the same Superior Court judge. Granting relief from stay to allow the State Court Action to proceed affording Ferder the ability to fully litigate his claims and defenses will resolve the issues by and between Ferder, the Debtor and other third parties. This factor alone establishes "cause" to grant Ferder relief from stay to proceed with the State Court Action.

59.     The State Court Action involves purely state law issues and is one of eight pending actions in the State Court involving materially the same core set of facts and which arise out of certain Diamond Contracts that are at issue in the State Court Action. Permitting the State Court to continue presiding over the State Court Action is in the interest of judicial economy and is the most expeditious and economically efficient forum within which to adjudicate the parties' respective rights. To allow for a full adjudication of those rights, "cause" exists under this tenth factor to warrant Ferder relief from stay.

**11. The State Court Action is Not Set for Trial**

60.     The State Court Action has been pending since June 2025, and the Plaintiff has only recently filed its Amended Complaint. As such, this eleventh factor is not relevant.

**12. The Impact of the Stay on the Parties and the "Balance of Hurt" Favors Granting Relief from Stay**

61.     In this case, denying relief from the automatic stay to Ferder to pursue his offsetting counterclaims against the Debtor and others will have the fundamentally unfair effect of denying Ferder his full range of defenses in litigation brought by the Plaintiff. Further, because the

counterclaims are compulsory in nature pursuant to California's entire controversy doctrine, they could be forever lost unless litigated in the State Court Action. A consideration of the impact of the stay on the parties and balance of harms weighs strongly in favor of granting Movant relief from the automatic stay pursuant to this twelfth factor.

### WAIVER OF STAY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(A)(3)

62.     Orders granting relief from the stay are themselves stayed for fourteen (14) days unless the Court orders otherwise "for cause." Fed. R. Bankr. P. 4001(a)(3).

63.     Movant respectfully submits that the rationale above for granting relief from the stay also supports waiver of the fourteen (14) day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3) to enable Movant to immediately exercise his rights in the State Court.

### CONCLUSION

64.     Granting relief from the automatic stay in this circumstance is consistent with the relief granted by numerous other courts facing similar circumstances.  *See, e.g., In re Countryside Manor, Inc.,* 188 B.R. 489 (Bankr. D. Conn. 1995) (granting relief from automatic stay because counterclaim "clearly qualifies as an offset of a mutual debt" and the "administration of justice, convenience of the parties and judicial economy are better served by having all the claims and counterclaims resolved by the same court – in this instance, the state court"); *In re Millsap,* 141 B.R. 732, 733 (Bankr. D. Idaho 1992) (creditor entitled, "in most instances as a matter of right," to relief from stay to assert compulsory counterclaim in debtor-initiated non-bankruptcy proceeding); *In re Pro Football Weekly, Inc.,* 60 B.R. 824, 826 (N.D. Ill. 1986) (modifying stay to permit creditor to prosecute counterclaim in district court where stay prejudices creditor through inability to pursue compulsory counterclaim); *Massey-Ferguson, Inc. v. Central Equip. & Serv. Co., Inc.,* 61 B.R. 986, 988 (Bankr. N.D. Ga. 1986) (creditor granted relief from stay to assert

counterclaim as setoff against debtor); *Ideal Roofing & Sheet Metal Works, Inc. v. M.R. Harrison Constr. Corp.,* 9 B.R. 2, 3 (Bankr. S.D. Fla. 1980) (same). This Court should reach the same result.

65.     For the reasons set forth above, Movant respectfully requests that the Court grant Movant relief from the automatic stay, and a waiver of the fourteen (14) day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3) to permit litigation to continue in the State Court.

                                        Respectfully submitted,

Dated: January 27, 2026

                                        */s/  Jeffrey M. Schlerf*
                                        Jeffrey M. Schlerf (No. 3047)
                                        STINSON LLP
                                        1007 N. Orange St.
                                        3rd Floor #127
                                        Wilmington, DE 19801
                                        Telephone: (302) 509-4634
                                        Email: jeffrey.schlerf@stinson.com

                                         -and-

                                        Sandford L. Frey (admitted pro hac vice))
                                        STINSON, LLP
                                        1901 Avenue of the Stars, Suite 450
                                        Los Angeles, California 90067
                                        Telephone: (310) 730-7020
                                        Email:  sandford.frey@stinson.com

# EXHIBIT A

CORE/3536099.0002/237229181.1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Lugano Diamonds & Jewelry Inc., *et al.*,[1] | Case No. 25-12055 (BLS) |
| Debtors. | (Jointly Administered) |

## ORDER GRANTING MORDECHAI FERDER, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE OF THE HAIM FAMILY TRUST'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Upon consideration of the Mordechai Ferder, Individually And In His Capacity As Trustee Of The Haim Family Trust's Motion For Relief From The Automatic, Or Alternatively To Lift The Stay To Allow For The Pursuit Of Such Claims  (the "**Motion**")[2] and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and this Court having found that notice of the Motion and opportunity were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' U.S. federal tax identification number, to the extent applicable, are as follows: Lugano Diamonds & Jewelry Inc. (6784), Lugano Holding, Inc. (9690), Lugano Buyer, Inc. (4565), K.L.D. Jewelry, LLC (0319), and Lugano Prive, LLC (4308). The notice address for the Debtors is 620 Newport Center Dr., Ste 100, Newport Beach, CA 92660.

[2] Capitalized terms used but not defined herein have the meanings ascribed in the Motion.

proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is GRANTED.

2.  The automatic stay imposed by 11 U.S.C. § 362 is hereby terminated and modified to permit Movant Mordechai Ferder, individually and in his capacity as Trustee of The Haim Family Trust ("**Movant**") to (a) file, serve and prosecute any and all counterclaims, including compulsory counterclaims (including conducting discovery in connection therewith), against the debtor Lugano Diamonds & Jewelry Inc. in the action captioned *Lugano Diamonds and Jewelry, Inc. v. Ferder, et. al.*, Case No. 30-2025-01492210-CU-CO-CJC ("State Court Action"), including in the event of a remand back to the Superior Court of California, County of Orange, Case No. 30-2025-01492210-CU-CO-CJC; (b) assert any right of setoff or recoupment in connection therewith.

3.  Movant's request for a waiver of the 14-day stay under Bankruptcy Rule 4001(a)(3) is granted.

4.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

5.  This order is binding and effective despite any conversion of any of these bankruptcy cases to a cases under any other chapter of the Bankruptcy Code.